**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KATHERINE CALAVAN, individually and** | ) | |
| **On behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21-CV-00185** |
| | ) | |
| **v.** | ) | **Honorable Charles P. Kocoras** |
| | ) | |
| **FIRST LOVE INTERNATIONAL** | ) | |
| **MINISTRIES, STEVEN JOHNSON,** | ) | |
| **JERRY WINSLOW, PAUL LONER,** | ) | |
| **PHILIP GUSKE, ROBERT OPPERMAN,** | ) | |
| **PHOEBE WILHELM, DALE GRAY,** | ) | |
| **THOMAS CLINTON, ROBERT CLINTON,** | ) | |
| **LOVING INDEED, INC., and JOHN DOE** | ) | |
| **CO-CONSPIRATORS 1-100,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ....................................................................................................... i

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ............................................................................................................... 1

**LEGAL STANDARD** .......................................................................................................... 1

**PLAINTIFF'S RELEVANT ALLEGATIONS** ...................................................................... 2

**ARGUMENT** ...................................................................................................................... 6

    **I.   PLAINTIFF'S RICO CLAIMS SHOULD BE DISMISSED** ........................................ 6

        **A.  Plaintiff's Reliance On Predicate Acts of Wire and Mail Fraud Are Barred Because These Alleged Violations Do Not Apply Extraterritorially.** ..................... 7

        **B.  A Civil RICO Claim Is Not An Appropriate Vehicle To Address An Underlying Violation Of Foreign Law Or "International Norms."** ..................... 10

        **C.  Plaintiff Fails To Establish Any Alleged Witness Tampering To Sustain A RICO Claim.** ................................................................................................ 18

        **D.  Plaintiff Has Not Properly Alleged The Existence Of A RICO Enterprise.** ...... 21

        **E.  Plaintiff Has Failed to Properly Allege RICO Claims Against The Individual Defendants.** ................................................................................. 22

    **II.   PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED.** ..................... 24

**CONCLUSION** ................................................................................................................. 25

## TABLE OF AUTHORITIES

**Authority from the Supreme Court of the United States**

*Am. Ins. Ass'n v. Garamendi,*
539 U.S. 396 (2003)...............................................................................................25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................2

*Beck v. Prupis,*
529 U.S. 494 (2000)...........................................................................................7, 20

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................................2

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000)...............................................................................................25

*EEOC v. Arabian Am. Oil Co.,*
499 U.S. 244 (1991)...............................................................................................12

*Hemi Grp., LLC v. City of New York,*
559 U.S. 1 (2010)...................................................................................................20

*Hines v. Davidowitz,*
312 U.S. 52 (1941).................................................................................................25

*Holmes v. Sec. Inv'r Prot. Corp.,*
503 U.S. 258 (1992)...............................................................................................20

*Kiobel v. Royal Dutch Petroleum Co.,*
569 U.S. 108 (2013).................................................................................... 11, 12, 17

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992).................................................................................................2

*Microsoft Corp. v. AT & T Corn.,*
550 U.S. 437 (2007).................................................................................................8

*Morrison v. Nat'l Austl. Bank Ltd.,*
561 U.S. 247 (2010)........................................................................................*passim*

*Nat'l Org. for Women, Inc. v. Scheidler,*
    510 U.S. 249 (1994)...............................................................................................21

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993)...............................................................................................23

*RJR Nabisco, Inc. v. European Cmty.,*
    136 S.Ct. 2090 (2016)....................................................................................*passim*

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004)........................................................................13-14, 15

*WesternGeco LLC v. ION Geophysical Corp.,*
    138 S. Ct. 2129 (2018) ..........................................................................................8

## Authority from Federal Courts of Appeals

*Berg v. First State Ins. Co.,*
    915 F.2d 460 (9th Cir. 1990)...............................................................................21

*DeGuelle v. Camilli,*
    664 F.3d 192 (7th Cir. 2011)..................................................................................7

*Drake v. B.F. Goodrich Co.,*
    782 F.2d 638 (6th Cir. 1986).................................................................................21

*Emery v. Am. Gen. Fin., Inc.,*
    71 F.3d 1343 (7th Cir. 1995).................................................................................24

*EEOC v. Concentra Health Servs., Inc.,*
    496 F.3d 773 (7th Cir. 2007)...............................................................................1-2

*Evans v. City of Chi.,*
    434 F.3d 916 (7th Cir. 2006)................................................................................21

*Fitzgerald v. Chrysler Corp.,*
    116 F.3d 225 (7th Cir. 1997)................................................................................22

*Gagan v. Am. Cablevision, Inc.,*
    77 F.3d 951 (7th Cir. 1996)..................................................................................20

*Gamboa v. Velez,*
    457 F.3d 703 (7th Cir. 2006)..................................................................................7

*Genty v. Resolution Trust Corp.*,
    937 F.2d 899 (3d Cir. 1991) .................................................................................................21

*Gibson v. City of Chi.*,
    910 F.2d 1510 (7th Cir. 1990) .............................................................................................. 1

*Goren v. New Vision Int'l, Inc.*,
    156 F.3d 721 (7th Cir. 1998) ........................................................................................23, 24

*Grogan v. Platt*,
    835 F.2d 844 (11th Cir. 1988) .............................................................................................21

*Humphrey v. GlaxoSmithKline PLC*,
    905 F.3d 694 (3d Cir. 2018) ...........................................................................................8, 13

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
    610 F.3d 382 (7th Cir. 2010) ..............................................................................................22

*Lerner v. Fleet Bank*,
    318 F.3d 113 (2d Cir. 2003) ...........................................................................................20-21

*Long v. Shorebank Dev. Corp.*,
    182 F.3d 548 (7th Cir. 1999) ............................................................................................... 1

*Robin v. Arthur Young & Co.*,
    915 F.2d 1120 (7th Cir. 1990) ............................................................................................24

*Rylewicz v. Beaton Serv., Ltd.*,
    888 F.2d 1175 (7th Cir. 1989) ............................................................................................21

*Slaney v. The Intern. Amateur Athletic Fed'n*,
    244 F.3d 580 (7th Cir. 2001) ............................................................................................... 7

*United Food and Comm. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ..............................................................................................22

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
    322 F.3d 942 (7th Cir. 2003) ............................................................................................... 2

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ................................................................................................24

## Authority from Federal District Courts

*Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*,
   244 F. Supp. 3d 750 (N.D. Ill. 2017) ............................................................. 24-25

*Davit v. Davit*,
   366 F. Supp. 2d 641 (N.D. Ill. 2004) .................................................................7, 19

*Edwards v. Holishor Ass'n, Inc.*,
   2018 WL 2225111 (S.D. Ill. 2018) ...................................................................... 22

*Exeed Indus., LLC v. Younis*,
   2016 WL 6599949 (N.D. Ill. 2016) ...................................................................... 16

*Golden v. Nadler, Pritkin & Mirabelli, LLC*,
   2005 WL 2897397 (N.D. Ill. 2005) ...................................................................... 19

*Hobley v. Burge*,
   2004 WL 2658075 (N.D. Ill. 2004) .................................................................7, 19

*McKinney v. State of Ill.*,
   720 F. Supp. 706 (N.D. Ill. 1989) ....................................................................... 19

*Motorola Solutions, Inc. v. Hytera Commc'n Corp. Ltd.*,
   436 F. Supp. 3d 1150 (N.D. Ill. 2020) ................................................ 7-8, 10, 24-25

*Nuevos Destinos, LLC v. Peck*,
   2019 WL 6481441 (D.N.D. 2019) ......................................................................... 9

*Pettiford v. Sheahan*,
   2004 WL 626151 (N.D. Ill. 2004) ....................................................................... 19

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
   757 F. Supp. 14999 (N.D. Ill. 1990) ................................................................... 23

*United States v. Hawit*,
   2017 WL 663542 (E.D.N.Y. 2017) ........................................................................ 8

*Wooley v. Bridgeview Bank Mortgage Co., LLC*,
   2015 WL 327357 (N.D. Ill. 2015) .................................................................... 24-25

## Statutory Authority

18 U.S.C. § 1512 ...........................................................................6, 18, 19, 20

18 U.S.C. § 1512(a) ................................................................................................ 19

18 U.S.C. § 1961 ...................................................................................................... 1

18 U.S.C. § 1961(1) .................................................................................................. 7

18 U.S.C. § 1962 ............................................................................................ 6, 7, 11, 20

18 U.S.C. § 1962(c) ............................................................................................ 6-7, 23

18 U.S.C. § 1962(d) ................................................................................................. 7

18 U.S.C. § 1964(c) ............................................................................................ 20-21

**Federal Rules**

Fed. R. Civ. P. 9(b) ............................................................................................... 24

Fed R. Civ. Pro. 12(b)(1) ................................................................................... 1, 2, 15

Fed. R. Civ. Pro. 12(b)(6) .................................................................................. 1-2, 15

NOW COME Defendants, FIRST LOVE INTERNATIONAL MINISTRIES ("FLIM"), STEVEN JOHNSON, JERRY WINSLOW, PAUL LONER, PHILIP GUSKE, ROBERT OPPERMAN, DALE GRAY, THOMAS CLINTON, PHOEBE WILHELM, and ROBERT CLINTON, ("First Love Defendants") by and through their undersigned attorneys, BORKAN & SCAHILL, LTD., and pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), move this Court for an order dismissing Plaintiff's Complaint. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiff's prolix seventy (70) page Complaint is a blatant and obvious attempt to enlist the United States judicial system in effecting Plaintiff's desired extraterritorial legal and political change in a foreign country by contorting and misusing the civil action provisions of The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and various state consumer protection laws and a claim for unjust enrichment as ill-fitting bludgeons to accomplish these political ends. Whatever can be said for Plaintiff's dubious (and often blatantly false) allegations against First Love International Ministries and its individual board members in connection with their charitable fundraising efforts as a not-for-profit, the law is clear that the United States judicial system and its laws are simply not appropriate to litigate such issues, much less under the guise of a civil claim seeking monetary damages from a not-for-profit organization. Indeed, recognizing such a claim would directly contradict United States Supreme Court precedent, would impermissibly interfere with the Kenyan government's exclusive right to police and regulate the operation and legality of Charitable Children's Institutions ("CCIs") in Kenya, and would otherwise impermissibly intrude in foreign affairs in violation of Supreme Court precedent. This Complaint must be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). To survive a Rule 12(b)(6) motion to

dismiss, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Twombly*, 550 U.S. at 555.

On a motion brought under Fed. R. Civ. P. 12(b)(1), the burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). At issue here is the Article III requirement of standing. To proceed, Plaintiff must establish (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) the likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## PLAINTIFF'S RELEVANT ALLEGATIONS

Defendants will not recount all of the specific details of Plaintiff's unnecessarily-long exposition of the national and international history of the use of orphanages stemming back to the 1700s and the criticism of same from various sources because space does not permit and because it ultimately does not impact the merits of this Motion. Suffice it to say, however, Plaintiff has a philosophical and historical problem with any and all institutionalization of children in orphanages or CCIs anywhere in the world (and, in particular, in Kenya) and has specific problems with the manner in which several specific CCIs allegedly have been (and are being) operated in Kenyan under Kenyan law and "international norms."

Defendant FIRST LOVE INTERNATIONAL MINISTRIES ('FLIM") is a not-for-profit Illinois corporation based in Rockford, Illinois. *See* Dckt. No. 1 at ¶ 24. Defendants STEVEN JOHNSON, JERRY WINSLOW, PAUL LONER, PHILIP GUSKE, ROBERT OPPERMAN, DALE GRAY, THOMAS CLINTON, and ROBERT CLINTON are all alleged to be board members or executives of FLIM. *Id.* at ¶¶ 25-33. Plaintiff is a former "Director of Social Services" of FLIM and claims to have donated time and money to FLIM (through time and donations). *Id.* at ¶¶ 23, 103-114, 126-127.

2

The crux of Plaintiff's claims all come down to one essential theory: the operation and practices of certain Kenyan CCIs offends Kenyan legal standards and various "international norms" and, thus, FLIM's solicitation of charitable donations within the United States from United States donors to financially support these CCIs overseas constitutes a violation of both the civil RICO statute as well as state consumer protection laws in essentially every state in the union (as well as constitutes "unjust enrichment"). *See* Dckt. No. 1 at ¶¶ 1-19, 42-180, 205-223.

Plaintiff presents a host of vague violations of these Kenyan "standards" relating to CCIs (i.e. not resorting to institutionalization as a "last resort," not creating a "small, family-like environment," "failing to counsel and support families to continue to care for their children," generally "failing to implement proper gatekeeping measures to ensure that placement in institutional care is in the best interests of the child," that children residing in these CCIs do not come from sufficiently dire circumstances to necessitate being placed in these institutions, etc.) (*id.* at ¶¶ 129-180, 223) coupled with a handful of fact-specific allegations regarding alleged mistreatment of children at these Kenyan CCIs (*id.* at ¶¶163- 180).

Indeed, as the crux of her claims, Plaintiff not only takes issue with specific alleged improper practices of these Kenyan CCIs in particular but takes the extreme position that *the mere operation of a CCI at all* is so offensive to Plaintiff's view of "international consensus" that any involvement whatsoever by anyone in supporting or perpetuating the operation of such organizations anywhere in the world should be deemed a matter permissible to adjudicate in a United States court as a civil claim as so-called "orphanage trafficking." *Id.* at ¶ 3 ("There is no such thing as a "good" orphanage, according to child development experts."); *id.* at ¶ 7 ("Despite international consensus that no child should live in an orphanage except as a last resort, Defendant First Love and its Board Members are raising money from American donors and voluntourists to build, expand, and perpetuate its orphanages – called Charitable Children's Institutions ("CCIs") in Kenya and other countries for children that would be better off with their own families and in their own villages."); *id.* at ¶ 8 ("…CCIs…are unnecessary for long-term care and in contravention of international norms."); *id.* at ¶¶ 42-91.

3

In any event, Plaintiff is crystal clear that it is alleged violations of Kenyan law and international standards alone which forms the crux of her substantive grievances. *Id.* at ¶ 19 ("Plaintiffs and putative class members have donated their time and money to First Love and members of the First Love Solicitation Enterprise, believing that their donations were for the betterment of children and consistent with international norms. Because the donations were used in ways that contravene international norms at the direction of First Love and the First Love Solicitation Enterprise, Plaintiff seeks compensatory and punitive damages, individually and on behalf of class members, for violations of the Racketeering Influenced and Corrupt Organizations Act and state consumer protection laws, and for unjust enrichment."); *id.* at ¶ 95 ("…First Love preys on American donors for money to build CCIs that are unnecessary and in contravention of international norms."); *id.* at ¶¶ 128-179 (purporting to describe "[e]xamples of First Love's practices that violate international consensus and Kenya's National Standards…"); *id.* at ¶ 180 (alleging that "First Love's practices violate international consensus and Kenya's National Standards by" in various ways); *id.* at ¶ 223 ("As to Plaintiffs and the Class, First Love and the First Love Solicitation Enterprise deceived them in to donating money, resources, and time by leading them to believe that First Love and the First Love Solicitation Enterprise's work followed all international and local best practices in the best interests of the children."). In other words, United States law is merely a conduit for Plaintiff to seek adjudication of the supposed illegality of the operation of foreign enterprises rather than a source of substantive legal violations. *Id.*

In this regard, the alleged RICO violations committed by Defendants were supposedly failing to disclose the alleged violations of Kenyan standards and failing to direct Plaintiff to such Kenyan standards showing such alleged violations of such standards. *Id.* at ¶ 223 ("As to Plaintiffs and the Class, First Love and the First Love Solicitation Enterprise deceived them in to donating money, resources, and time by leading them to believe that First Love and the First Love Solicitation Enterprise's work followed all international and local best practices in the best interests of the children…"); *id.* at ¶ 261 ("Had members of the First Love Solicitation Enterprise not been complicit and had they revealed instead of concealed

4

the failure to abide by international consensus and Kenyan policy on orphanage trafficking, Plaintiff and members of the Class would not have been injured. Thus, their injuries were directly and proximately caused by Defendants' racketeering activity, as described above."). In other words, Plaintiff claims Defendants violated United States law by simply compiling donations because Plaintiff contends the Kenyan entity to which these donations were going was allegedly not following Kenyan law and/or "international norms" in its practices. *Id.* To this end, Plaintiff alleges Defendants violated the civil RICO statute because Defendants charitable fundraising efforts were conducted in part using the mail, email, and social media and, thus, constitute mail and wire fraud. *Id.* at ¶¶ 245, 249-252.

Despite Plaintiff's theory that these Kenyan CCIs are supposedly being operated in violation of Kenyan law, noticeably absent from Plaintiff's complaint is any allegation whatsoever that the Kenyan government itself (who has exclusive jurisdiction over what is and is not improper in its own country) has found the operation of these CCIs to be improper in any way, shape, or form much less deemed their continued operation to offend its own laws or standards. *See* Dckt. No. 1. This silence is particularly deafening because Plaintiff alleges she actually filed a formal complaint with the Kenyan authorities regarding the operation of these CCIs but omits any reference to whether these "Kenyan authorities" found any merit to these allegations or otherwise took any official action against these CCIs as a result. *Id.* at ¶ 18 ("Recently, Plaintiff and other donors have raised their concerns regarding First Love's practices to Kenyan government officials abroad and to donor groups domestically."); *id.* at ¶ 181 ("After it became clear that First Love was not going to fix the ongoing problems and abuse at its CCI in Kenya, Ms. Calavan submitted a complaint entitled "FIRST LOVE CHILDREN'S HOME REPORT: STATEMENT OF KATHERINE CALAVAN AND EVIDENCE OF SYSTEMIC ABUSE OF CHILDREN IN THE CCI" and dated December 11, 2019 to the Kenya Department of Children's Services."); *id.* at ¶ 188 ("On June 9, 2020, Ms. Calavan submitted a supplement report to the Kenya DCS County Children's Coordinator "concerning potential trafficking of children to First Love Kenya.").

In furtherance of her RICO claims, Plaintiff also alleges a purported violation of 18 U.S.C. § 1512 arising from Defendants supposed "threats" to Plaintiff after Plaintiff complained about the operation of the Kenyan CCIs "to the Kenya Department of Children's Services." *See id.* at ¶¶ 189-192, 246-248. These supposed threats consist of little more than a refutation of the veracity of Plaintiff's allegations, a request to supply evidence supporting the allegations, and (later) the service of a "cease and desist letter" taking issue with the veracity of Plaintiff's allegations. *Id.* Notwithstanding the false and disingenuous characterization of these incidents as crimes, Plaintiff does not allege any her business or property interests were harmed in any way as a result of these actions. *Id.* Rather, Plaintiff merely concludes Defendants "used intimidation and threats and caused others to use intimidation and threats to hinder, delay, or prevent the communication of the facts alleged herein." *Id.*

Relying on these exact same allegations as set forth above, Plaintiff further claims these actions violate "the state consumer protection acts" of all fifty states in the union. *See* Dckt. No. 1 at Ct. III. While Plaintiff cites generally to the respective acts at issue, Plaintiff does not bother to explain how the allegations in the Complaint violate any particular portion thereof. *Id.*

## ARGUMENT

### I. PLAINTIFF'S RICO CLAIMS SHOULD BE DISMISSED.

As set forth above, the sole crux of Plaintiff's RICO claims relies on a theory that is 100% dependent on a supposition and finding that certain Kenyan CCIs are supposedly operating in Kenya in violation of Kenyan law and "international norms." Using this exclusively foreign substantive conduct as an initial premise, Plaintiff claims Defendants violated United States criminal law by soliciting donations which support or benefit these foreign CCIs by "deceiving" donors about the legality of their operation overseas. This is not appropriate subject matter for a lawsuit under RICO.

Counts I and II of Plaintiff's Complaint allege claims for violation of the civil RICO statute, 18 U.S.C. § 1964(c), which provides a civil remedy for any alleged violations of the criminal RICO statute, 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). Pursuant to Section 1962(c), it is "unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Pursuant to Section 1962(d), it is "unlawful for any person to conspire to violate" any Section 1962(c) statute. *See* 18 U.S.C. § 1962(d). Liability under Section 1962(d) is derivative of liability under Section 1962(c) and, thus, a failure to establish an underlying RICO violation renders a derivative conspiracy claim non-actionable as well. *See Beck v. Prupis*, 529 U.S. 494, 505 (2000); *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011); *Davit v. Davit*, 366 F. Supp. 2d 641, 653-54 (N.D. Ill. 2004)(where plaintiff fails to properly state a predicate act, RICO claim is properly dismissed); *Hobley v. Burge*, 2004 WL 2658075, *11 (N.D.Ill. 2004)("In order to sufficiently allege a RICO conspiracy, a plaintiff must sufficiently allege RICO predicate acts."). To state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001). Each element of a RICO claim must be clearly satisfied because RICO "does not cover all instances of wrongdoing[;] [r]ather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

### A. Plaintiff's Reliance On Predicate Acts of Wire and Mail Fraud Are Barred Because These Alleged Violations Do Not Apply Extraterritorially.

First, Plaintiff relies on allegations of wire fraud and mail fraud in violation of 18 U.S.C. § 1341 as alleged predicate acts. *See* Dckt. No. 1 at ¶¶ 245, 249. Under RICO, "racketeering activity" is limited to the violation of various predicate violations of United States criminal statutes specified in 18 U.S.C. § 1961(1). *See* 18 U.S.C. § 1962. In cases where foreign conduct is alleged as a basis for predicate acts, it is necessary to determine whether a litigant is improperly seeking to apply RICO extraterritorially. *See RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct. 2090, 2099 (2016). The first step in assessing whether a valid claim can be pursued is determining whether the alleged predicate acts arise under a statute which has

extraterritorial effect. *RJR Nabisco*, 136 S. Ct. at 2099-2100; *Motorola Solutions, Inc. v. Hytera Commc'n Corp. Ltd.*, 436 F. Supp. 3d 1150, 1155 (N.D. Ill. 2020).

It is a "basic premise" of our legal system that, in general, United States law "governs domestically but does not rule the world." *RJR Nabisco, Inc.*, 136 S. Ct. at 2101 *citing Microsoft Corp. v. AT & T Corn.*, 550 U.S. 437, 454 (2007). This principle is expressed as the "presumption against extraterritoriality," which governs a court's interpretation of whether a statute reaches beyond the United States. *Id.* Specifically, "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id. citing Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). This presumption rests on the "commonsense notion that Congress generally legislates with domestic concerns in mind.... And it prevents unintended clashes between our laws and those of other nations which could result in international discord." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136, (2018).

In determining whether a statute was intended to apply extraterritorially, it is not enough that RICO might be permissibly applied extraterritorially in *some* instances; rather, the *specific predicate criminal statute itself* must have been intended to be applied extraterritorially. *RJR Nabisco, Inc.*, 136 S. Ct. at 2101 ("Although a number of RICO predicates have extraterritorial effect, many do not. The inclusion of some extraterritorial predicates does not mean that all RICO predicates extend to foreign conduct."). On this issue, the specific predicate statute must "manifest[] an unmistakable congressional intent to apply extraterritorially" in order to rebut the presumption against extraterritoriality. *Id.*

While the Supreme Court in *RJR* sidestepped the issue of whether the mail fraud and wire fraud statutes have extraterritorial application, other courts have uniformly found these statutes do not have extraterritorial effect. *See Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 708 (3d Cir. 2018); *United States v. Hawit*, 2017 WL 663542, *4 (E.D.N.Y. 2017)("As the parties recognize, the federal wire fraud statute, 18 U.S.C. § 1343, does not apply extraterritorially."). As a result, a claim premised on substantive violations of international law cannot proceed regardless of whether some of the activity at issue in

furtherance of these supposed foreign violations was directed at or occurred in the United States. *RJR Nabisco, Inc.*, 136 S. Ct. at 2101 ("[I]f the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory…"); *Morrison*, 561 U.S. at 266 (2010)(barring extraterritorial application of United States law to foreign bank in context of securities fraud despite allegations that fraudulent activity in furtherance occurred within the United States; "[I]t is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."); *Exeed Indus., LLC v. Younis*, 2016 WL 6599949, *3 (N.D. Ill. 2016)(dismissing civil RICO claims because of failure to establish extraterritorial reach; "The fact that two of the wire transfers to MREMC were initiated from Chicago does not create a domestic injury. This U.S.-based conduct may be related to the central scheme but it is not integral or pervasive enough to overcome the fact that the bulk of the illegal racketeering activities are alleged to have occurred abroad."); *see also Petroleos Mexicanos v. SK Engineering & Const. Co. Ltd.*, 572 Fed.Appx. 60, 61 (2d Cir. 2014)(civil RICO claim premised on wire and mail fraud arising from funding of foreign oil refinery project was deficient regardless of fact that financing was obtained in the United States; "[S]imply alleging that some domestic conduct occurred cannot support a claim of domestic application."); *Nuevos Destinos, LLC v. Peck*, 2019 WL 6481441, *21 (D.N.D. 2019)("True enough, the United States was the end point for the predicate acts. But fewer than all the essential elements of mail and wire fraud occurred in the United States, and the activities underlying the scheme took place in Peru. As a result, wielding the mail and wire fraud statutes in this case would result in their impermissible extraterritorial application.").

Because the crux of Plaintiff's claims arise from alleged violations of substantive international law and norms and because the predicate criminal statutes alleged do not apply extraterritorially, Plaintiff cannot proceed on claims premised on violations of these statutes or any conspiracy to violate these.

**B. A Civil RICO Claim Is Not An Appropriate Vehicle To Address An Underlying Violation Of Foreign Law Or "International Norms."**

Second, and more importantly, even if one were to assume that the alleged predicate acts of racketeering invoked by Plaintiff themselves applied extraterritorially or otherwise established a substantive predicate RICO violation, Plaintiff's claims would nonetheless fail as a matter of law. The reason this is so is that this is a *civil* RICO case and civil RICO cases are essentially *never* appropriate vehicles in which to adjudicate alleged violations of the law of a foreign country or so-called "international norms." *See RJR Nabisco, Inc.*, 136 S. Ct. at 2106-11; *Motorola Solutions, Inc.*, 436 F. Supp. 3d 1150 ("[A]lthough certain criminal RICO actions could be applied extraterritorially (where the underlying predicate acts clearly incorporated extraterritorial-reaching crimes), the private right of action itself does not extend extraterritorially to adjudicate violations of international law, even when based on the exact same predicate as a criminal RICO prosecution."). The reason for this strict treatment of civil RICO claims arises from concerns for international discord with foreign nations, the possibility for differential enforcement schemes in foreign jurisdictions to address violations of their own laws, and concerns over retributive actions by foreign powers if United States courts applying United States laws were used to address substantive foreign legal violations.

Here, the entire basis for Plaintiff's invocation of RICO in this case relies on the supposition that certain Kenyan CCIs are operating in various ways that Plaintiff claims violate Kenyan law and "international norms." Indeed, Plaintiff goes so far as to suggest that these CCIs should not be permitted to operate at all because, in essence, she believes that all "orphanages" are harmful to children. While Plaintiff attempts to expand the reach of these claims onto United States soil by suing a domestic not-for-profit who provides charitable donations supporting these foreign CCIs, there is no dispute that the alleged legal violations that are substantively at issue in this case are not domestic violations but rather alleged violations of Kenyan law and "international norms." As a result, this case plainly falls outside the

10

purview of a civil RICO claim and must be dismissed with prejudice. Indeed, this particular case is a *uniquely inappropriate* vehicle in which to invoke RICO as a basis for relief in a United States court.

As noted above, the RICO statute itself contains some predicate acts which apply extraterritorially. *See RJR Nabisco, Inc.*, 136 S.Ct. at 2101, 2103 (noting that "RICO defines racketeering activity to include a number of predicates that plainly apply to at least some foreign conduct" and that "[a] violation of § 1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial."). However, according to the United States Supreme Court, this analysis of extraterritoriality is only germane when RICO is being used in connection with a *criminal* prosecution by United States authorities; civil RICO cases are essentially never appropriate vehicles in which to address alleged substantive violations of the law of a foreign country or international norms. *RJR Nabisco, Inc.*, 136 S.Ct. at 2103, 2108-2111 ("[T]he presumption against extraterritoriality must be applied separately to both RICO's substantive prohibitions and its private right of action. It is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries. Something more is needed, and here it is absent.").

The question of whether a civil action under RICO applies extraterritorially is a separate question from whether a predicate criminal act of racketeering can be applied extraterritorially. *Id.* at 2106 ("[W]e separately apply the presumption against extraterritoriality to RICO's cause of action despite our conclusion that the presumption has been overcome with respect to RICO's substantive prohibitions."). As framed by the Supreme Court even prior to *RJR*:

> The question…is not whether a federal court has jurisdiction to entertain a cause of action provided by foreign or even international law. The question is instead whether the court has authority to recognize a cause of action under U.S. law to enforce a norm of international law.

*See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 119 (2013). On this issue, the *RJR* Court held, in essence, that a civil RICO claim is essentially never appropriately applied to address violations of foreign law or international norms. *Id.*, 136 S.Ct. at 2108-2111.

11

There are numerous reasons for this preclusion. First, the *RJR* Court noted that permitting alleged violations of foreign law or "international norms" to be addressed in United States courts applying United States law impermissibly intrudes into the area of politics by creating the risk of international discord with foreign governments. *RJR Nabisco, Inc.* 136 S. Ct. at 2100 ("There are several reasons for this presumption [against extraterritoriality]. Most notably, it serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign countries.").

In *Kiobel* (relied upon by *RJR*), the Supreme Court further explained why permitting United States courts applying United States law to address alleged violations of foreign law or international norms is not permissible. *Kiobel*, 569 U.S. at 115. The *Kiobel* court began by noting that barring United States courts from adjudicating alleged violations of international law is necessary in order to "protect against unintended clashes between our laws and those of other nations which could result in international discord." *Id. quoting EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). To wit:

> For us to run interference in ... a delicate field of international relations there must be present the affirmative intention of the Congress clearly expressed. It alone has the facilities necessary to make fairly such an important policy decision where the possibilities of international discord are so evident and retaliative action so certain." The presumption against extraterritorial application helps ensure that the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches.

*Id.* While the *potential* for conflict is a basis for this preclusion, this preclusion applies regardless of whether this is any *actual* conflict between the law of the foreign jurisdiction and the law of the United States. *RJR Nabisco, Inc.*, 136 S. Ct. at 2100 ("We…apply the presumption [against extraterritoriality] across the board, 'regardless of whether there is a risk of conflict between the American statute and a foreign law.'"); *id.* at 2107 ("'[A] risk of conflict between the American statute and a foreign law' is not a prerequisite for applying the presumption against extraterritoriality"). This also applies regardless of whether the foreign jurisdiction itself objects to such adjudication within the United States. *Id.* at 2107-08 ("We reject the notion that we should forgo the presumption against extraterritoriality and instead permit extraterritorial suits based on a case-by-case inquiry that turns on or looks to the consent of the affected sovereign.").

Second, even if the substantive laws and protected interests in the foreign jurisdiction are identical, potential differences in exactly *how* such laws are enforced (and by whom) also militates against allowing such suits to proceed in United States courts. This is a particularly acute consideration under RICO because RICO contains a highly unusual scheme which permits quasi-enforcement of criminal laws by private parties seeking money damages for themselves, permits "treble damages," permits recovery of attorney's fees and costs, penalties, etc.

The *RJR* Court explained that "[t]he creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion." *Id.* The Court used antitrust cases as an example and explained:

> In that context, we have observed that "[t]he application ... of American private treble-damages remedies to anticompetitive conduct taking place abroad has generated considerable controversy" in other nations, even when those nations agree with U.S. substantive law on such things as banning price fixing. Numerous foreign countries—including some respondents in this case—advised us in Empagran that "to apply [U.S.] remedies would unjustifiably permit their citizens to bypass their own less generous remedial schemes, thereby upsetting a balance of competing considerations that their own domestic antitrust laws embody."
>
> We received similar warnings in *Morrison*, where France, a respondent here, informed us that "most foreign countries proscribe securities fraud" but "have made very different choices with respect to the best way to implement that proscription," such as "prefer[ring] 'state actions, not private ones' for the enforcement of law." Allowing foreign investors to pursue private suits in the United States, we were told, "would upset that delicate balance and offend the sovereign interests of foreign nations."

*Id.*; *see also Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 708 (3d Cir. 2018)("Dismissal of those claims is consistent with RJR Nabisco's policy considerations. As noted earlier, the Supreme Court cautioned against the risks of "international friction" associated with allowing foreign entities to "bypass" potentially "less generous remedial schemes" available in their home jurisdictions and pursue treble damages for injuries suffered abroad through civil RICO actions in the United States."). As stated in *RJR*, "[t]he creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement

13

without the check imposed by prosecutorial discretion." *Id.* at 2106 *quoting Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004).

This concern over differential enforcement schemes was similarly addressed in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 269 (2010). To wit:

> [T]he regulation of other countries often differs from ours as to what constitutes fraud, what disclosures must be made, what damages are recoverable, what discovery is available in litigation, what individual actions may be joined in a single suit, what attorney's fees are recoverable, and many other matters.

On this point, the *RJR* Court also rejected arguments that recognizing extraterritorial application to foreign legal violations via a civil RICO claim applying United States law would help to ensure that a defendant does not "escape full liability for his illegal actions." *RJR Nabisco, Inc.* at 2110. The Court held that "this reasoning…fails to distinguish between extending *substantive…law* to foreign conduct and extending a *private right of action* to foreign injuries, two separate issues that, as we have explained, raise distinct extraterritoriality problems." *Id.*

Third, permitting adjudication of alleged foreign legal violations in United States courts applying United States laws risks encouraging the reverse to occur in foreign countries applying their own laws to address alleged violations of United States law. In *Kiobel*, the Supreme Court specifically rejected the notion that the United States should be construed as "a uniquely hospitable forum for the enforcement of international norms." *Kiobel*, 569 U.S. at 123. Quoting Justice Story, the Court reiterated that:

> "No nation has ever yet pretended to be the custos morum of the whole world…." It is implausible to suppose that the First Congress wanted their fledgling Republic—struggling to receive international recognition—to be the first. Indeed, the parties offer no evidence that any nation, meek or mighty, presumed to do such a thing.

*Id.* Recognizing such a gambit would run the risk of the reverse happening in foreign jurisdictions. *Id.* Specifically, alleged occurrences in the United States that are in alleged violation of international norms becoming the subject of litigation in foreign tribunals under foreign law. The Court explained:

> [A]ccepting petitioners' view would imply that other nations, also applying the law of nations, could hale our citizens into their courts for alleged violations of the law of nations occurring in the United States, or anywhere else in the world. The presumption against extraterritoriality

14

guards against our courts triggering such serious foreign policy consequences, and instead defers such decisions, quite appropriately, to the political branches.

*Id.* at 124. The perils of making United States law an appropriate vehicle to address international law violations was also addressed thusly in *Sosa*:

> It is one thing for American courts to enforce constitutional limits on our own State and Federal Governments' power, but quite another to consider suits under rules that would go so far as to claim a limit on the power of foreign governments over their own citizens, and to hold that a foreign government or its agent has transgressed those limits…Since many attempts by federal courts to craft remedies for the violation of new norms of international law would raise risks of adverse foreign policy consequences, they should be undertaken, if at all, with great caution.

*Sosa*, 542 U.S. at 727-28.

Fourth, the *RJR* Court also distinguished between a proper attempt to enforce foreign law in a United States Court invoking diversity jurisdiction but applying international law (which might be appropriate) and one which improperly attempts to apply substantive United States law (such as the RICO statute) to allegations of international law violations (which is not appropriate). *Id.* at 2109.

Finally, the fact that alleged acts in support of international law violations occurred in the United States is of no moment in determining whether this lawsuit should be permitted to proceed. Indeed, this very issue was resolved by the Supreme Court in *Morrison*. *Morrison*, 561 U.S. at 266. *Morrison* involved a set of plaintiffs who were allegedly defrauded in the purchase of foreign securities of defendant (a foreign bank) arising from defendants' purchase and servicing of mortgages in the United States through a United States company owned by defendants. *Id.* at 251-52. Plaintiffs sought to remedy this fraudulent activity by filing a civil claim in federal district court under the Securities Exchange Act. *Id.* Because the securities purchased were all traded in a foreign market rather than the United States, defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1) arguing that the plaintiffs were attempting to apply United States law extraterritorially. *Id.* at 254. This motion was granted and affirmed on appeal. *Id.* In seeking to overcome the presumption against extraterritorial application of United States law, the plaintiffs argued that the defendants committed various predicate acts of deception within the United States in furtherance of this international fraud. To wit:

15

Petitioners argue that the conclusion that § 10(b) does not apply extraterritorially does not resolve this case. They contend that they seek no more than domestic application anyway, since Florida is where HomeSide and its senior executives engaged in the deceptive conduct of manipulating HomeSide's financial models; their complaint also alleged that Race and Hughes made misleading public statements there. *Id.* at 266.

The *Morrison* Court directly rejected this argument as a basis to overcome the presumption against extraterritorial application of United States law to address foreign conduct and noted:

> [I]t is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case.

*Id.* The Court then concluded this alleged domestic activity in furtherance of alleged international law violations was not a valid basis in which to overcome the presumption against extraterritorial application of United States law to address foreign conduct. *Id.* at 266-68. This was so because the "focus" of the law at issue was not the acts in furtherance of the securities fraud but rather the substantive fraud itself. *Id.* at 236; *see also RJR, Inc.*, 136 S. Ct. at 2100; *Exeed Indus., LLC*, 2016 WL 6599949 at *3 (dismissing civil RICO claims because of failure to establish extraterritorial reach; "The fact that two of the wire transfers to MREMC were initiated from Chicago does not create a domestic injury. This U.S.-based conduct may be related to the central scheme but it is not integral or pervasive enough to overcome the fact that the bulk of the illegal racketeering activities are alleged to have occurred abroad.").

Given the above, it is pellucid that Plaintiff's claims cannot proceed under RICO. In fact, this case is a uniquely appropriate case for dismissal.

First, as set forth above, Plaintiff is on an apparent mission not only to have the very existence of these Kenyan CCIs be deemed illegal but indeed claims that all institutionalization of children around the world should be outlawed as well. Using the alleged violations of international law as the substantive basis for these RICO claims, Plaintiff seeks to effectively have any and all United States citizens or organizations barred from providing any financial support or soliciting donations of any kind because Plaintiff believes that international law is being violated in Kenya. It is simply not consistent with the

16

preclusion against fostering discord with a foreign nation to permit such a claim to proceed. If such illegal conduct is occurring, it is for the Kenyan government to address these not a United States citizen suing another United States citizen or not-for-profit based out of the United States for money damages. And, of course, there is neither any allegation nor indication that Kenya has made any such finding. Indeed, given the highly subjective and cultural-context-dependence of the supposed violations at issue here (i.e. what constitutes the "best interest" of a child, what constitutes a "last resort" before institutionalization, what constitutes dire economic conditions in a home, etc.), adjudication of such international law issues in a United States court applying United States law is particularly inappropriate and likely to lead to very real possibilities of discord with a foreign nation.

Second, as noted above, the most important consideration in precluding a civil RICO claim from extending to extraterritorial conduct is not whether a foreign jurisdiction recognizes the same conduct as illegal (or even criminal) but that there are inevitable differences in *exactly how* such violations are investigation, prosecuted, or remedied. In this case, this goes beyond a *potential* conflict into an *actual* conflict with Kenyan remedial procedures. Plaintiff alleges she made several complaints to Kenyan authorities regarding this underlying conduct but does not bother to allege the resolution of same. The additional problem with this, as recognized by United States Supreme Court precedent, is that the Kenyan government has its own set of procedural mechanisms for addressing complaints about the operation of CCIs. Permitting a United States court to circumvent such procedures via a civil case with its own host of extra-prosecutorial private remedies would directly contradict the language of both *RJR Nabisco, Inc.* as well as *Morrison* and *Kiobel* which held that allowing litigants to "bypass…less generous remedial schemes" of a foreign jurisdiction is precisely what is *not* allowed. *RJR Nabisco, Inc.,* 136 S. Ct. at 2106.

This is especially problematic because the RICO statute is a highly unusual law which permits civil enforcement of criminal statutes (a function ordinarily exclusively delegated to a governmental body) and contains a host of favorable procedural and remedial provisions. While this may be fine as far as the United States is concerned, other countries may not be so willing to divest the layer of prosecutorial

discretion over the alleged violation of their laws to interested private parties seeking money who are not beholden to the citizenry of the jurisdiction at issue. There is no indication that Kenyan law has any such analogue and, even if it did, this would be an irrelevant matter under Supreme Court precedent.

Third, the fact that Plaintiff alleges conduct in the United States in support of entities which are supposedly operating in violation of international law is of no moment and has repeatedly been rejected as a basis for a civil RICO claim. Plaintiff seeks to expand the reach of United States law to resolve violations of international law by relying on domestic activities committed in furtherance of these alleged foreign violations. Indeed, Plaintiff alleges no stand-alone violation of United States law which does not rely up on the supposition that international law (rather than United States law) is the substantive basis. As set forth in *Morrison*, the rule against extraterritorial effect of United States law to foreign conduct would be "a craven watchdog" if it could be so easily set aside merely because a party alleged some domestic activity in furtherance of alleged international law violations.

Finally, as set forth above, the preclusion against extending civil RICO claims over substantive violations of international law is to protect United States citizens (here and abroad) from being hauled into foreign courts applying foreign law to purported violations occurring in the United States. Given rampant controversy over United States domestic policies in the international community in the recent years over things such as our immigration policies, detention of children, pandemic response, etc., it is certainly not appropriate to set a precedent for a United States court to present itself as an arbiter of whether international law has been violated by applying our own substantive law in our courts. This is exactly what the Supreme Court cautioned against in *RJR* and its progeny.

**C. Plaintiff Fails To Establish Any Alleged Witness Tampering To Sustain A RICO Claim.**

Notwithstanding the above, Plaintiff's claims are wholly deficient to the extent they rely on alleged acts of witness tampering in violation of 18 U.S.C. § 1512. As set forth above, the "official proceeding" that Defendants supposedly "tampered" with was Plaintiff's complaint lodged "the Kenya Department of Children's Services" and consisted of nothing more than Defendants articulating their refutation of

the veracity of Plaintiff's allegations and issuing a cease and desist letter to Plaintiff. Plaintiff's Complaint is also utterly devoid of any allegations regarding any business or property interest being impacted by these alleged acts. This is an utterly frivolous theory of relief under the circumstances of this case.

First, to state a valid claim for witness tampering or retaliation, the alleged intimidation or tampering must occur in connection with an "official proceeding" or in connection with an individual providing certain types of information to a federal law enforcement officer or federal judge. *See* 18 U.S.C. §§ 1512(a), 1515(a). Alleged tampering with the proceedings of other non-federal jurisdictions is not within the purview of Section 1512. *See Davit*, 366 F. Supp. 2d at 655 (allegations of tampering with non-federal proceeding was not a violation of Section 1512; "Significantly, for purposes of Sections 1512 and 1513, an "official proceeding" is defined as a proceeding before various *federal* tribunals, Congress, *federal* agencies, and insurance regulatory officials….The upshot of all of this is that both Section 1512 and 1513 relate to *federal* investigations, agents, and proceedings that are not implicated here."); *Hobley*, 2004 WL 2658075 at *10-11 (dismissing civil RICO claim arising from defendant alleged tampering with witnesses in state court criminal proceedings; "In order to be actionable, these offenses must be committed in connection with federal proceedings."); *Pettiford v. Sheahan*, 2004 WL 626151, *11 (N.D.Ill. 2004)(alleged tampering in context of conduct occurring in state correctional facilities was not actionable under Section 1512 because this was not a federal proceeding); *McKinney v. State of Ill.*, 720 F. Supp. 706, 708-709 (N.D. Ill. 1989)(dismissing witness tampering claim where there was no federal official proceeding but rather state Department of Human Rights); *Golden v. Nadler, Pritkin & Mirabelli, LLC*, 2005 WL 2897397, *4 (N.D. Ill. 2005)(dismissing RICO witness intimidation claim for lack of a predicate official proceeding despite state court proceedings in progress).

Plaintiff not only fails to allege any tampering or interference with a federal proceeding, she does not even allege interference with any *domestic* proceeding at all. Rather, the proceeding at issue is alleged to be one relating to a child welfare or regulatory agency of a foreign country or private individuals. *See* Dckt. No. 1 at ¶ 189 ("After Calavan complained to the Kenya Department of Children's Services,

19

Clinton threatened and caused Calavan to be threatened in several ways."); *id.* at ¶ 18 ("Plaintiff and other donors have raised their concerns regarding First Love's practices to Kenyan government officials abroad and to donor groups domestically."). This is simply not within the purview of Section 1512.

Second, Plaintiff has not alleged any harm to any business or property interest proximately caused by any purported witness tampering. Rather, Plaintiff simply concludes she was intimidated regarding "communication of the facts alleged herein." *See* Dckt. No. 1 at ¶ 248. Indeed, in the portion of Plaintiff's Complaint purporting to set forth Plaintiff's "RICO injury," Plaintiff simply alleges the provision of money "under false pretenses" without even bothering to address any putative injury arising independently from any threat or intimidation. *Id.* at ¶¶ 260-62. This is plainly insufficient.

The civil RICO statute, 18 U.S.C. § 1964(c), provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue ... in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." § 1964(c). The Supreme Court has also interpreted the Act to require a civil RICO plaintiff to show that defendants' Section 1962 violations proximately caused the plaintiff's injury. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Proximate cause "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id. quoting Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). In order to proceed with a civil RICO claim, a plaintiff must establish that: (1) defendants' alleged misconduct was a but-for cause of plaintiff's injury, (2) that defendants' alleged misconduct was a proximate cause of plaintiff's injury, or (3) that the injury plaintiff claims is cognizable under the RICO Act. *See Holmes*, 503 U.S. at 267-68. The Supreme Court has held all three elements must be met to entitle a plaintiff to sue under 18 U.S.C. § 1964(c). *Id.*

The phrase "injured in business or property" has been interpreted as a standing requirement— rather than an element of the cause of action—which must be satisfied in order to prevail on a RICO claim. *See Gagan v. Am. Cablevision, Inc.,*77 F.3d 951, 958-59 (7th Cir. 1996). The causation component of § 1964(c) has also been considered a component of standing. *See, e.g., Beck*, 529 U.S. at 494; *Lerner v. Fleet*

20

*Bank*, 318 F.3d 113, 123 (2d Cir.2003). As such, the issue "represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Id. quoting Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).

"[T]he terms 'business or property' are…words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Evans v. City of Chic.*, 434 F.3d 916, 925 (7th Cir. 2006). A plaintiff must allege a "concrete financial loss," which does not encompass a "mere injury to a valuable intangible property interest." *Id.* at 932. Put another way, "injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous." *Id.* In the civil RICO context, personal injuries which may result in pecuniary losses, but are nonetheless insufficient to provide standing under § 1964(c) have been found to include injury to mental health or emotional distress; *see Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918 (3d Cir. 1991); sickness, poisoning and emotional distress, *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 643-44 (6th Cir. 1986); emotional distress due to loss of security and peace, *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990); injury stemming from the harassment and intimidation of federal witnesses, *Rylewicz v. Beaton Serv., Ltd.,* 888 F.2d 1175, 1179 (7th Cir. 1989); loss of income due to wrongful death of a family member/source of support, *Grogan v. Platt*, 835 F.2d 844, 846-47 (11th Cir. 1988), and inability to pursue or obtain meaningful employment, *id.* Nor do attorney's fees or costs associated with defending oneself against alleged false allegations constitute a cognizable RICO injury. *Evans*, 434 F. 3d at 931-32.

Plaintiff makes no attempt whatsoever to establish any injury to business or property allegedly proximately caused by Defendants' supposed threats. Accordingly, Plaintiff has failed to allege a valid RICO claim on these grounds as well.

**D. Plaintiff Has Not Properly Alleged the Existence Of A RICO Enterprise.**

Plaintiff's allegations against FLIM and its individual board members are alleged to constitute the alleged RICO enterprise for the purposes of Plaintiff's RICO claims. *See* Dckt. No. 1 at ¶¶ 24-33. Plaintiff alleges no allegations of any particular member in furtherance of such enterprise separate and apart from

21

each's involvement as a board member or executive of FLIM. *Id.* To the contrary, Plaintiff effectively alleges that FLIM and its individual board members were the enterprise itself for the purposes of RICO liability. *Id.* at ¶¶ 92-223.

To state a RICO claim, a plaintiff must (among other things) identify an "enterprise" which consists of both a legal enterprise and a person who separately conducted the enterprises affairs. *See United Food and Comm. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2010); *Edwards v. Holishor Ass'n, Inc.*, 2018 WL 2225111, *3 (S.D. Ill. 2018). However, a corporation is not considered to be distinct from its board members for the purposes of RICO liability and, thus, a RICO claim cannot proceed with this as a viable theory of a criminal enterprise. *Edwards*, 2018 WL 2225111 at *3 ("The Holishor defendants maintain that plaintiff failed to allege an enterprise as plaintiffs never identify which defendant or entity is the actual enterprise and that plaintiffs fail to identify a person district from the enterprise. The Court agrees….Holishor is not distinct from its board members. The complaint does not contain allegations to indicate that Holishor is distinct as there are no allegations that the board members seized control of Holishor by unlawful, criminal activity and had an existence separate from Holishor with respect to the allegations."); *Jay E. Hayden Foundation*, 610 F.3d at 389 (affirming dismissal of RICO complaint because "defendants did not use the conspiracy (the enterprise); they were the conspiracy."); *Fitzgerald v. Chrysler Corp.*,116 F.3d 225, 226 (7th Cir. 1997)("Read literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or of telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the "enterprise." The courts have excluded this far-fetched possibility by holding that an employer and its employees cannot constitute a RICO enterprise.").

**E. Plaintiff Has Failed to Properly Allege RICO Claims Against The Individual Defendants.**

Plaintiff's Complaint should also be dismissed for failing to state a claim under RICO for failing to identify with the requisite specificity the conduct of each individual Defendant.

22

In attempting to create liability for the individual Defendants, Plaintiff relies more on their association with First Love than actual facts demonstrating specific conduct by the individual Defendants. Plaintiff is required, however, to allege sufficient facts demonstrating the individual Defendants conducted or participated in the conduct of the affairs of the alleged racketeering enterprise through a pattern of racketeering. 18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 177-178 (1993) (RICO plaintiffs must clearly set forth facts to support a defendant participated in the operation or management of the enterprise itself). Allegation of mere participation in the activities of the enterprise is insufficient. *Reves*, 507 U.S. at 179; *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998); *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1509 (N.D. Ill. 1990) (an individual must have committed at least two predicate acts in order to be held liable under a RICO claim).

Plaintiff relies on a vague conclusion about the Board Members' conduct in furthering the alleged enterprise (Dckt. No. 1 at ¶¶ 241, 244), but fails to specifically identify what role in the operation and management of the enterprise each individual undertook distinct from their roles as board members. *Reves*, 507 U.S. at 179; *Goren*, 156 F.3d at 728 (distinction between an individual's provision of services for an entity versus participation in the operation and management of the RICO enterprise itself and that a plaintiff must do more than merely allege an individual's participation in the enterprise). Plaintiff appears to rely on the mere fact of the individual Defendants' positions on First Love's board of directors to create liability by association, rather than any meaningful allegations of predicate offenses to impose individual RICO liability. *See, e.g., id,* at ¶¶ 241, 244 (referencing "First Love, including its Board Members" in describing the "roles of the participants"). Where Plaintiff does identify an individual Board Member, that conduct as alleged (as discussed *infra*), fails to show a sufficient predicate act of fraud or witness intimidation to impose individual RICO liability as discussed herein. *Id.* at ¶¶ 120-121, 182, 190-191, 193.

Thus, the Complaint alleges fraudulent conduct by an alleged RICO enterprise with the individual Defendants' involvement, without identifying any specific role or management of the enterprise by the individual Defendants aside from a general recitation of the elements of the claim "as applied" to

23

"Defendants" and their alleged role in the "operation or management of the affairs of the First Love Solicitations." Dckt. No. 1 at ¶¶ 254-256. In so doing, Plaintiff has failed to properly notify each individual Defendant of their purported role in the RICO enterprise. *See Goren*, 156 F.3d at 730 *citing Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)). These conclusory group allegations as to the individual Defendants' purported involvement in the RICO enterprise fall far short of the required particularity demanded by Rule 9(b). *Id.* ("lumping" together of individual defendants insufficient to state a claim under RICO); *see also Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990); *Emery v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995)(vague allegations as to purported fraud against unnamed "others" aside from plaintiff failed to meet the requisite detail to state a RICO claim).

## II. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED.

Plaintiff's state law claims fare no better in this lawsuit either. As noted above, Plaintiff appears to have just consulted a consumer protection law treatise, "copied and pasted" the initial title heading of every consumer protection statute in the nation, and claimed an entitlement to proceed thereunder in this lawsuit. *See* Dckt. No. 1 at Ct. III. Plaintiff also alleges a claim for unjust enrichment. *Id.* at Ct. IV.

First, given that Plaintiff has failed to establish a federal claim for any violation of RICO, this Court should deny supplemental jurisdiction over the state law claims asserted in this lawsuit pursuant to 28 U.S.C. 1367.

Second, these claims fail for similar reasons to those arising from Plaintiff's RICO claims. These claims not only violate the law against extraterritorial application of civil laws, it violates the United States Constitution itself. Like claims arising under federal law, state law is not an appropriate vehicle in which to adjudicate extraterritorial violations. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-85 (2005)(the Illinois Consumer Fraud and Deceptive Business Practices Act did not apply extraterritorially because of the "long-standing rule of construction in Illinois" that a statute has no extraterritorial effect unless explicitly stated); *Motorola Solutions, Inc.*, 436 F. Supp. 3d 1150; *Armada (Singapore) Pte Ltd. v. Amcol*

*Int'l Corp.*, 244 F. Supp. 3d 750, 757 (N.D. Ill. 2017); *Wooley v. Bridgeview Bank Mortgage Co., LLC*, 2015 WL 327357, *2 (N.D.Ill. 2015).

However, here, permitting a *state* law to be used adjudicate alleged violations of *international* law would violate the dormant commerce clause of the Art. I, § 8, cl. 3 of the United States Constitution as well as the exclusive power of the federal government to adjudicate issues relating to foreign affairs *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 403 (2003)(state law which purports to regulate matters of international law or touching on international relations is unconstitutional); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 387-88 (2000)(state law that purported to interfere with federal scheme for dealing with alleged legal violations of foreign country was unconstitutional); *Hines v. Davidowitz*, 312 U.S. 52, 63, 61 (1941)("Our system of government ... imperatively requires that federal power in the field affecting foreign relations be left entirely free from local interference."). The power to determine whether and to what extent international law violations may be made subject to domestic adjudication lies with the federal government not the respective state governments. As set forth in Part I relating to Plaintiff's RICO claims, Plaintiff's claims seek to adjudicate violations of international law by applying United States law in a United States court. Because this is not an appropriate application of federal law, it cannot be an appropriate application of state law either. Accordingly, Plaintiff's state law claims must be dismissed.

## CONCLUSION

WHEREFORE, Defendants, FIRST LOVE INTRENATIONAL MINISTRIES, STEVEN JOHNSON, JERRY WINSLOW, PAUL LONER, PHILIP GUSKE, ROBERT OPPERMAN, DALE GRAY, THOMAS CLINTON, PHOEBE WILHELM, and ROBERT CLINTON respectfully request this Court enter an order dismissing Plaintiff's Complaint and for such other relief which this Court deems proper.

Steven B. Borkan                                    Respectfully submitted,
Timothy P. Scahill
Emily E. Schnidt                                    By: /s/Timothy P. Scahill
Whitney N. Hutchinson

Nicholas K. Fedde
Andrew M. Cook
Christiane E. Murray
Borkan & Scahill, Ltd.
20 S. Clark Street, Suite 1700
Chicago, Illinois 60603
312-580-1030

Counsel for Defendants, FIRST LOVE INTERNATIONAL MINISTRIES, STEVEN JOHNSON, JERRY WINSLOW, PAUL LONER, PHILIP GUSKE, ROBERT OPPERMAN, DALE GRAY, THOMAS CLINTON, PHOEBE WILHELM, and ROBERT CLINTON