## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE CALAVAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 21 C 185 |
| FIRST LOVE INTERNATIONAL MINISTRIES, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' Motion to Dismiss Plaintiff Katherine Calavan's Complaint and Motion to Dissolve the Preliminary Injunction. For the following reasons, the Court grants the Motions.

## BACKGROUND

For the purposes of these motions, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Calavan's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Defendant First Love International Ministries ("First Love") claims it is a "non-denominational mission agency founded for the purpose of bringing love and hope to people residing in impoverished regions of the world." Dkt. # 1, ¶ 94. It operates

several orphanages, called Cultural Care Institutions ("CCIs"), in Kenya. However, according to Calavan, First Love's former Director of Social Services, this claim is false; the orphanages are not filled with "orphans" as the term is commonly understood in the United States, but rather children who have one or more living parents and extended family members.

Calavan says First Love built a solicitation network, which she calls the First Love Solicitation Enterprise (the "Enterprise"), made up of First Love, Defendant Loving InDeed, Inc. ("Loving InDeed"), First Love's officer and directors—Defendants Steven Johnson, Jerry Winslow, Paul Loner, Philip Guske, Robert Opperman, Phoebe Wilhelm, Dale Gray, Thomas Clinton, and Robert Clinton (collectively, the "Individual Defendants")—and various John Doe Co-Conspirators, as well as third-parties Little Lambs Kenya and Abba's House. Calavan alleges the Enterprise solicits American donors online for money to build CCIs and seeking "voluntourists" to visit the CCIs. She says the Enterprise solicits the donations by building a "deceptive tapestry" of Kenyan children in need, but the donations are actually used for Defendants' own personal economic gain and to perpetuate the alleged sham orphanages.

Based on these allegations, Calavan claims Defendants: (1) violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c) (Count I); (2) conspired to violate RICO, 18 U.S.C. 1962(d) (Count II); (3) violated all 50 states and the District of Columbia's consumer protection acts, *see* Dkt. # 1, at ¶ 271

(listing each state's consumer protection act) (Count III); and (4) were unjustly enriched (Count IV). In support of her RICO claims, Calavan alleges Defendants committed wire and mail fraud by making misleading communications about First Love and its orphanages to solicit donations. She also says Defendants committed witness tampering by harassing her and others in order to prevent reports to the Kenyan government. Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges a court's subject matter jurisdiction. As in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement

3

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise its right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants move to dismiss the Complaint and to dissolve the preliminary injunction. We address the Motion to Dismiss first.

### I.  Motion to Dismiss

Calavan alleges violations of RICO and various state law claims. We begin our analysis with Calavan's RICO claims.

#### a.  RICO Claims

Defendants move to dismiss Calavan's RICO claims for several reasons. First, Defendants argue Calavan lacks standing to bring a RICO claim. They also contend

4

Calavan alleges an impermissible extraterritorial application of RICO.    Finally, Defendants assert Calavan fails to sufficiently allege her RICO claims.   We address each argument in turn.

### 1.  RICO Standing

Defendants first argue the RICO claims must be dismissed under Rule 12(b)(1) because Calavan lacks standing.   Defendants contend Calavan alleges only intangible emotional harms.   To have standing under RICO, a plaintiff must allege an injury to their business or property.  *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992).   The phrase "in his business or property" excludes "personal injuries."  *Id.*  "Thus, 'a civil RICO action cannot be premised solely upon personal or emotional injuries.'"  *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 590 (7th Cir. 2017) (quoting *Doe*, 958 F.2d at 767).

Here, Calavan alleges more than intangible emotional harm.   Calavan claims she lost money through donations to First Love.   And "[m]oney, of course, is a form of property."  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979).   Thus, Calavan alleges an injury to her property and has standing to bring her RICO claims.  *See Exec. Comm. Representing Signing Petitioners of Archdiocese of W. U.S. v. Kaplan*, 2004 WL 6084228, at *3 (C.D. Cal. 2004) (finding RICO standing where the plaintiff alleged monetary donations intended for charitable purposes were misused and obtained through false pretenses).

### 2. Extraterritorial Application of RICO

Next, Defendants argue Calavan is impermissibly seeking to apply RICO extraterritorially. We agree.

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (cleaned up). When a statute gives no clear indication of an extraterritorial application, it has none. *Id.* This presumption helps "avoid the international discord that can result when U.S. law is applied to conduct in foreign countries." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016).

The Supreme Court has identified two questions for resolving extraterritoriality issues in civil RICO cases: (1) whether RICO's substantive prohibitions apply to conduct that occurs in foreign countries; and (2) whether RICO's private right of action applies to injuries suffered in foreign countries. *Id.* As to the first question, the Supreme Court determined there is extraterritorial application "only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *Id.* at 326. And the Supreme Court definitively answered the second question: RICO's private right of action applies only to domestic injuries. *Id.* at 354.

The Court follows a two-step analysis to determine whether a statute applies extraterritorially. "At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear,

affirmative indication that it applies extraterritorially." *Id.* at 337. If Congress clearly rebutted that presumption, then we need not proceed to the second step; but if Congress did not, then the second step is to determine if the case involves a domestic application of the statute by looking at the statute's "focus." *Id.* "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.*

Both the wire fraud and mail fraud statutes are silent as to their extraterritorial application. Therefore, the statutes apply only to conduct within the US. Additionally, as the Supreme Court held in RJR Nabisco, the civil enforcement provision of RICO does not apply extraterritorially. *Id.* at 354. Thus, Calavan's RICO claims will only survive if she alleges domestic conduct.

In her sprawling 70-page Complaint, Calavan describes the first 19 paragraphs as the "introduction" to the lawsuit. The indisputable essence of the substance of the Complaint is a condemnation of orphanages in Africa and the "booming business of 'voluntourism,'" which sustain the practices and institutions that do harm to children. Aside from the specific deficiencies in the Complaint relied on by Defendants for dismissal, discussed below, the matter of extraterritorial reach of American law, the

alleged violations of Kenyan law and international norms comprise the heart of the Complaint.

At bottom, while it is true that solicitation and receipt of contributions from American citizens and the use of certain means in the solicitation and transmission of funds occurred in the US, the truth or falsity of representations made in their inducement necessarily addresses foreign law and international norms. In other words, the only conduct in dispute is what occurred in Kenya and whether that conduct violated Kenyan law and international norms. In the Court's view, this is not the type of conduct the wire fraud, mail fraud, or RICO statutes were intended to remedy. Calavan therefore alleges an impermissible extraterritorial application of RICO.

### 3. Failure to State a RICO Claim

Even if Calavan alleges a permissible extraterritorial application of RICO, she fails to plausibly allege a RICO claim. To state a claim under RICO, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001). "A 'pattern' of racketeering activity consists of at least two predicate acts of racketeering (e.g., extortion, mail fraud) within ten years." *Nowicki v. Delao*, 506 F. App'x 514, 516 (7th Cir. 2013).

First, the RICO enterprise. RICO's definition of enterprise "has a wide reach." *Boyle v. U.S.*, 556 U.S. 938, 944 (2009). And "the very concept of an association in fact is expansive." *Id.* "[A]n association-in-fact enterprise must have at least three

structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. "The enterprise also must have 'a structure and goals separate from the predicate acts themselves.'" *Fund Recovery Servs., LLC v. RBC Cap. Mkts., LLC*, 2022 WL 142404, at *10 (N.D. Ill. 2022) (Kennelly, J.) (quoting *U.S. v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991)).

Despite the expansive nature of the definition, it is not limitless. *United Food and Comm. Workers Unions and Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). For example, "an employer and its employees cannot constitute a RICO enterprise." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997). And because "you cannot associate with yourself," *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985), a RICO plaintiff must "identify a 'person'—*i.e.,* the defendant—that is distinct from the RICO enterprise" and allege that person "conducted or participated in the conduct of the '*enterprise's* affairs' not just [its] own affairs," *Walgreen*, 719 F.3d at 853–54 (emphasis and alterations in original).

Here, Calavan alleges each Defendant is separate and distinct from the RICO enterprise. She says the Enterprise is made up of Defendants and non-parties including Abba's House, African Children's Project, Morning Star children's homes, and Lambs Kenya. She alleges the members of the Enterprise committed mail and wire fraud to enrich themselves by making misleading communications to solicit donations. Separate

9

from those predicate acts, Calavan claims the Enterprise members are running sham orphanages in Kenya.

Calavan also says First Love markets itself as "the organization that will process the donations given to Abba's House. Receipts and other correspondence have the First Love International name on them, as the official non-for-profit organization, but money donated will be distributed to Abba's House." Dkt. # 1, ¶ 201. Similarly, Calavan claims "Abba's House is a partner to Loving InDeed which is a registered 501(c)(3) and will be the organization that will issue IRS receipts at the year." *Id.* ¶ 202. Both First Love and Loving InDeed accept donations online through PayPal. First Love and Loving InDeed use Facebook, their websites, and online newsletters to solicit donations. The Enterprise appears to have been in existence since at least 2017, when Calavan alleges she began her involvement with First Love. Thus, Calavan plausibly alleges the existence of a RICO enterprise.

Where Calavan's RICO claim falls apart, however, is with her allegations of the predicate acts. Recall that Calavan alleges predicate acts of witness tampering, wire fraud, and mail fraud.

Defendants first argue Calavan's allegations of witness tampering fail. We agree, as Calavan only alleges Defendants tampered with witnesses in Kenyan proceedings. However, the statute applies only to tampering with witnesses in official proceedings in the U.S. *See* 18 U.S.C. § 1515(a)(1) (defining "official proceeding").

10

Therefore, Calavan does not sufficiently allege a violation of the witness tampering statute.

As to the remaining alleged predicate acts, "[a]llegations of mail and wire fraud in a civil RICO claim require the showing of the following elements: (1) the defendant has participated in a scheme to defraud and (2) the defendant has mailed or has knowingly caused another to mail a letter or other matter for the purpose of executing the scheme." *Fund Recovery Servs.*, 2022 WL 142404, at *8. The mail and wire communications need not be fraudulent in and of themselves, but they must further or carry out the scheme to defraud. *Id.* "To defraud" in this context means "wronging one in his property rights by dishonest methods or schemes" and "usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004).

Such allegations are subject to Rule 9(b)'s heightened pleading standards. *Goren v. New Vision Int'l., Inc.*, 156 F.3d 721, 729 (7th Cir. 1998). "Rule 9(b) requires a plaintiff to provide precision and some measure of substantiation to each fraud allegation." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019). Therefore, "a plaintiff must plead the 'who, what, when, where, and how' of the alleged fraud." *Id.* The Seventh Circuit "does not look favorably on many instances of mail and wire fraud to form a pattern" under RICO. *Id.*

Here, Calavan fails to adequately allege wire fraud and mail fraud for several reasons. First, Calavan fails to allege the fraud with particularity. For example,

Calavan alleges Tom Clinton, First Love's CEO, posted on Facebook "in early 2020" seeking donations. But, aside from failing to include the date the post was made, Calavan does not allege who, if anyone, was fraudulently induced to donate by this post. *See Resolute Forest Prods. Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1023 (N.D. Cal. 2017) ("[the plaintiff] claims that the Defendant 'processed millions of dollars in fraudulently induced donations,' without describing a single donor, donation date or amount, nor how the donation was fraudulently induced"). Similarly, Calavan generally alleges First Love and Loving InDeed advertised and received donations online. But she does not allege when these posts were made, who posted any of them, who received them, and how the recipients were deceived. *See id.*

Additionally, many of Calavan's allegations are not in furtherance of the scheme to defraud. For example, Calavan claims she received an email from Tom Clinton on April 19, 2017, instructing her to lie to Kenyan authorities about the reason for her entry into Kenya. But this email is not part the scheme to defraud because it was intended to deceive Kenya, not induce Calavan to donate money. "[O]ne cannot commit mail or wire fraud by fooling one person to receive something of value from another." *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013) (Dow, J.). And Calavan's allegations that Tom Clinton wished to investigate her claims internally within First Love do not show any fraudulent or deceptive conduct, and she does not allege how this was injurious to her. Therefore, Calavan fails to allege wire and mail fraud.

Calavan requests discovery to satisfy Rule 9's heightened pleading requirement, claiming all the necessary information is within Defendants' control. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("Specificity requirements may be relaxed, of course, when the details are within the defendant's exclusive knowledge."). But the Seventh Circuit in *Jepson* noted "loose references to mailings and telephone calls" in furtherance of a purported scheme to defraud will not do. *Id.* Similarly here, Calavan only makes loose references to allegedly fraudulent posts and newsletters. Calavan's missing allegations include things she could uncover herself—such as dates of postings. "For without an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established." *Id.* (cleaned up). Therefore, we deny Calavan's request to conduct discovery.

Next, the Individual Defendants argue Calavan does not allege their individual personal involvements. We agree. Calavan does little more than allege each individual defendant was a member of First Love's board. But she does not allege any degree of operation or management of the *Enterprise* by any of the Individual Defendants. Calavan's allegations fall far short of Rule 9(b)'s requirement that "a RICO plaintiff . . . plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren*, 156 F.3d at 726. Thus, her claims against the Individual Defendants fail for this reason too.

Lastly, Calavan fails to adequately allege a conspiracy to violate RICO. To state a RICO conspiracy claim, a plaintiff must allege: "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Id.* at 732. Here, Calavan makes no allegations of any agreements between Defendants and, thus, her RICO conspiracy claim fails.

Accordingly, Calavan's RICO claims are dismissed.

### b. State Law Claims

Calavan's state law claims[1] must be dismissed for the same reasons. First, state laws ordinarily do not apply beyond the state's boundaries. *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184 (2005) (Illinois statutes do not apply outside the state unless expressed clearly in the statute). Second, Claims brought under state consumer protection acts based on fraudulent conduct must be alleged with particularity under Rule 9(b), which Calavan fails to do for the reasons stated above. *See First Tr. Portfolio L.P v. Jackson Nat'l Life Ins. Co.*, 2009 WL 10697647, at *3 (N.D. Ill. 2009) (Guzman, J.). Thus, her claims under each of the 50 states' consumer protection acts are dismissed. Additionally, Calavan's unjust enrichment claim is also dismissed because "unjust enrichment is not a sperate cause of action" and is based on

---

[1] We have independent jurisdiction over the state law claims under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(2).

14

insufficiently plead fraudulent conduct. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011).

Because Calavan alleges an impermissible extraterritorial application of RICO and the various state laws, we dismiss her claims with prejudice.

## II.      Motion to Dissolve Preliminary Injunction

Defendants move to dissolve a preliminary injunction to prevent the harassment of witnesses in connection with this case. Because the Court dismisses the Complaint, the Motion is granted but the request for sanctions is denied. The Court notes, though, that the injunction was narrowly focused on alleged conduct by Defendants that could have interfered with potential witnesses in this case. That obligation continues by law throughout any further proceedings in this Court or the Seventh Circuit, whether the conduct occurs in the U.S. or Kenya. *See* 18 U.S.C. § 1512.

## CONCLUSION

For the reasons mentioned above, the Court grants Defendants' Motion to Dismiss (Dkt. # 30) and Motion to Dissolve the Preliminary Injection (Dkt. # 56). The motions for temporary restraining order (Dkt. # 51 & 52) are denied as moot. The Complaint is dismissed with prejudice. Civil case terminated. It is so ordered.

Dated: 03/09/2022

_____
Charles P. Kocoras
United States District Judge

15